United States Courts
Southern District of Texas
FILED

MAR 13 2019

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:19cr186 |
| § | |
| LAYMAR GIOSSE § | UNDER SEAL |
| PENA-TORREALBA § | |
| § | |
| DEFENDANT § | |

**INFORMATION**

THE UNITED STATES CHARGES:

Introduction

At all times material to this information:

1. Petroleos de Venezuela S.A. (together with its subsidiaries and affiliates, "PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA was responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries, including Citgo Petroleum Corporation ("Citgo"), were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

1

2. Defendant **LAYMAR GIOSSE PENA TORREALBA** ("Defendant"), a Venezuelan citizen and resident of Texas, was employed by PDVSA, or by wholly-owned subsidiaries or affiliates thereof, from in or around July 2015 until the present. During that time, Defendant held various positions in Citgo's procurement departments. Specifically, Defendant was a contract procurement officer in Citgo's Special Projects Group beginning in or around July 2015 through in or around April 2017, at which time she was hired as a full time PDVSA employee in the Special Projects Group. In or around December 2016, Defendant was promoted to Supervisor of the Special Projects Group. While employed at PDVSA, Defendant was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3. Jose Manuel Gonzalez Testino ("Gonzalez"), who has been charged separately, was a dual U.S.-Venezuelan citizen and controlled, together with others, a number of closely-held companies, including several U.S. companies that Gonzalez used to secure contracts to supply equipment and services to PDVSA. Gonzalez was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

4. "Businessman A," an individual whose identity is known to the United States, was Gonzales' business partner in Company A, described below, and a U.S.

citizen and resident of Florida. Businessman A was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

5. "Employee A," an individual whose identity is known to the United States, was employed by Gonzalez. Employee A's job responsibilities included handling PDVSA contracts for a logistics company controlled by Gonzalez, as well as tracking purchase orders and bribe payments related to multiple other companies controlled by Gonzalez.

6. "Employee B," an individual whose identity is known to the United States, was employed by Gonzalez. Employee B's job responsibilities included managing the day to day operations of some of Gonzalez's companies.

7. "Company A," a company whose identity is known to the United States, was organized under the laws of Florida and Switzerland, and was controlled by Gonzalez. Company A was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

8. "Company B," a company whose identity is known to the United States, was organized under the laws of Florida and Panama, provided logistics services for energy contracts awarded by PDVSA, and was controlled by Gonzalez. Company

3

B was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

9. "Pena Associate A," an individual whose identity is known to the United States, was a Venezuelan citizen and resident of Mexico, and an associate of the Defendant.

10. "Bank Account A," an account known to the United States, is a bank account in the name of Pena Associate A, located in Switzerland, into which Gonzalez's companies, including Company A, made bribe payments during the course of the conspiracy.

## COUNT ONE

### (18 U.S.C. § 371 – Conspiracy)

11. Beginning in or around 2016 and continuing through at least 2018, the Defendant,

**LAYMAR GIOSSE PENA TORREALBA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including Gonzalez, Businessman A, Employee A, Employee B, and others, to commit offenses against the United States, namely:

    a. knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct

or attempt to conduct such a financial transaction which in fact represented the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. transporting, transmitting, or transferring, or attempting to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

### Purpose of the Conspiracy

12. The purpose of the conspiracy was for Defendant, Gonzalez, Businessman A, Employee A, Employee B, and others to illegally enrich themselves by entering into a corrupt agreement whereby Gonzales, Businessman A, Employee

A, and Employee B paid and concealed bribes to Defendant in exchange for Gonzalez, Businessman A, Employee A, and Employee B secretly and illegally gaining an improper advantage in obtaining and retaining business with PDVSA.

## Manner and Means of the Conspiracy

13. The manner and means by which Defendant and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

14. Defendant, together with others, including Gonzalez, Businessman A, Employee A, and Employee B, agreed that Gonzalez, Businessman A, Employee A, and Employee B would pay bribes, and in fact did pay bribes, to Defendant in exchange for Defendant's assistance with Gonzalez's business with PDVSA.

15. Defendant agreed with Gonzalez to receive gifts and other things of value in connection with Gonzalez's business dealings with Defendant.

16. Bribe payments related to specific contracts, which were calculated as a percentage of the total contract value, were made only after Gonzalez's companies had received payment from PDVSA relevant to the contract.

17. Defendant's assistance included, but was not limited to:

    a. providing Gonzalez, Businessman A, Employee A, and Employee B with inside information regarding information that should be included with bid materials to be submitted to PDVSA,

6

        contracts being worked on by other buyers in the Special Projects Group, and upcoming contracts for parts and equipment needed by PDVSA; and

    b.    selecting Company B, Gonzalez's logistics company, to serve as the third-party logistics company to handle various purchase orders.

18.    Defendant, together with others, including Gonzalez, Businessman A, Employee A, and Employee B, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by directing bribe payments to be made into overseas accounts that were not in Defendant's name, but were instead in the name of Pena Associate A. To facilitate this scheme to conceal the nature, source, and ownership of the bribes, Pena Associate A received bribe payments for the Defendant in Pena Associate A's Mexican bank account and opened a bank account in Switzerland for Defendant's benefit and into which bribe payments were made.

### Overt Acts

19.    In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the

Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

20. On or about April 7, 2017, Defendant's relative sent Gonzalez an email stating, in part and as translated into English, "Hello here are the coordinates for . . . [Defendant] for you." The email contained, among other things, account information for a Mexican bank account belonging to Pena Associate A, who received payments on behalf of Defendant.

21. On or about May 10, 2017, Employee A forwarded the information contained in the email referenced in Paragraph 20 above to Gonzalez noting that $10,362 would be wired to Pena Associate A's account.

22. In or about May 2017, Gonzalez arranged for Pena Associate A to travel to Switzerland for the purpose of opening Bank Account A, into which Gonzalez could deposit bribe payments for Defendant.

23. On or about November 10, 2017, Employee B sent Gonzalez a spreadsheet tracking payments made from a U.S. business bank account of a Gonzalez controlled company. The spreadsheet showed a payment by check for $10,500 to Pena Associate A on February 11, 2017.

25. In or about July 2017, Gonzalez and Employee B made arrangements for Defendant and six of Defendant's family members to travel to Clearwater Beach,

8

Florida for a "weekend getaway" from August 10-13, 2017.

26. On or about July 27, 2017, Gonzalez sent an email to Employee B with subject line, as translated into English, "Clearwater itinerary," and stated, in part and as translated into English, "the only way for this to come out perfect is if you handle it personally."

27. On or about July 20, 2017, Gonzalez sent an email to Businessman A asking that $100,000 be wired from Company A's account to Bank Account A.

28. On or about August 2, 2017, Company A wired $57,472.11 to Bank Account A, which, together with $42,517.89 wired from Company A to Bank Account A on or about August 7, 2017, totaled $99,990.

29. In or about November 2017, Employee B made arrangements for Defendant and her family to travel to New York, New York over the Thanksgiving holiday.

30. On or about January 16, 2018, Gonzalez caused $101,893.98 to be wired to Bank Account A.

31. On or about March 27, 2018, Gonzalez caused $2,194.23 to be wired to Bank Account A.

32. On or about July 2, 2018, Gonzalez caused $793.18 to be wired to Bank Account A.

33. On or about August 31, 2018, Gonzalez caused $126,937.08 to be wired

to Bank Account A.

All in violation of Title 18, United States Code, Section 371.

## Notice of Criminal Forfeiture

32. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to **LAYMAR GIOSSA PENA TORREALBA** that in the event of her conviction of the offense charged in Count One of the Information, the United States intends to seek forfeiture of all property, real or personal, involved in money laundering offenses or traceable to such property.

## Money Judgment and Substitute Assets

33. The United States gives notice it will seek the imposition of a money judgment against Defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of Defendant in substitution up to the amount of the money judgment.

RYAN K. PATRICK
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF,
FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: /s/ JOHN P. PEARSON
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEYS

BY: /s/ SARAH E. EDWARDS
SONALI D. PATEL
TRIAL ATTORNEYS